**FILED**

TIME _1:51 PM_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NOV 3 0 2017

RICHARD W. **NAGEL**
Clerk of Court
CINCINNATI, **OHIO**

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
**614.551.1268**, THAT IS STORED AT
PREMISES CONROLLED BY **VERIZON
WIRELESS**

Case No. **1 1 17 M J -9 3 7**

**Filed Under Seal**

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

Your Affiant, Peter A. Lakes, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant makes this affidavit in support of an application for a search warrant

for information associated with cellular telephone number, **614.551.1268**, (**Target Telephone**)

that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a

wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster,

NJ 07921  The information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Verizon Wireless to disclose to

the government records and other information in its possession pertaining to the subscriber or

customer associated with the accounts, including the contents of communications.

2.      Your Affiant is an FBI Special Agent, and have been so employed since April

1995. Your Affiant has conducted investigations into criminal enterprises, narcotics

investigations, organized crime, and violent crimes to include the unlawful possession,

possession with the intent to distribute, and actual distribution of controlled substances, as well

as the associated conspiracies in violation of Title 21, United States Code, Sections 841(a)(1) and

846. Your affiant has also participated in the execution of federal search warrants and federal

arrest warrants in relation to these investigations.  Additionally, your affiant has participated in the installation and monitoring of tracking devices for vehicles in order to determine the whereabouts of believed drug traffickers and their illicit merchandise. Your affiant has also been involved with the monitoring of Title III Wire intercepts, and analysis of pen registers related to narcotics and gang investigations. Your affiant is familiar with their methods of concealing the whereabouts of their illegal drugs, the methods they use to keep law enforcement officers from finding evidence of drug trafficking operations as well as the methods they use to prevent others unfamiliar with their criminal conduct from observing things indicative of drug trafficking.  Your affiant is also familiar with the paranoia surrounding most drug traffickers and the common ways in which wholesale drug distributors attempt to conceal their assets, their purchases, and other financial dealings that could be traced to them.

3.      During the course of his law enforcement career Your Affiant has conducted and participated in the investigation of numerous criminal offenses, including those involved in the current investigation.  Your Affiant has participated in illicit drug trafficking investigations, violent crimes investigations, and gangs and criminal enterprise investigations, ranging from street level dealers to major drug suppliers.  These investigations have also included the unlawful importation, possession with intent to distribute and distribution of illegal substances, the related money laundering instruments, the conducting of monetary transactions involving the proceeds of specified unlawful activities, and conspiracies associated with criminal narcotics offenses. These investigations during my career, which have resulted in the seizure of narcotics, arrests of suspects, their prosecution, conviction; have involved: the use of confidential informants; the analysis of pen registers, trap and trace, and toll records; physical surveillances; electronic surveillances to include the use of poll cameras and vehicle cameras; and the execution of search warrants.

2

4.      Through training and experience Your Affiant is aware that drug traffickers often communicate with their customers, couriers, and/or associates through the use of standard hard-line telephones, cellular telephones and digital display paging devices, or use of multiple telephones or other devices, to avoid detection by law enforcement.  Facts set forth in this affidavit are based on personal knowledge derived from Affiant's participation in this investigation and upon information and belief.  The sources of my information and belief include:

      a.  Oral and written reports about this and other investigations which have been received from Special Agents of the FBI and other law enforcement authorities;

      b.  Physical surveillance conducted by Special Agents of the FBI or other law enforcement authorities and which have been reported to Affiant either directly or indirectly.

5.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 USC §§ 841 and 846 have been or are being committed by Joseph Brodbeck, and other as-yet unknown individuals.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## **PROBABLE CAUSE**

7.      Your Affiant was contacted by a Confidential Source (CS1) regarding the smuggling of narcotics into the London Correctional Institution (LoCI) in London, Ohio.  CS1 has provided information in the past that has been corroborated by independent investigation and has resulted in arrests of individuals for violent crimes.  Therefore, Affiant considers CS1 to be reliable.

3

8.      CS1 advised an Aramark employee working in the kitchen at LoCI was bringing in narcotics that are being distributed to inmates within LoCI. CS1 explained an inmate who is assigned to work in the kitchen that CS1 knows as "Blevins", was the inmate who was coordinating the distribution of the drugs inside the prison. If an inmate wants narcotics inside the prison, he gives Blevins a phone number of a friend or family member on the outside who has obtained the narcotics on behalf of the inmate. Blevins then provides the number to the Aramark employee who calls the number provided and arranges a pick- up of the narcotics. The Aramark employee then travels to meet the inmate's friend or family member, picks up the narcotics and delivers the narcotics to Blevins. Blevins then takes one-quarter ounce of the narcotics and provides the remainder to the inmate who originally provided the phone number to Blevins. The inmate who receives the drugs from Blevins then distributes or uses the drugs inside the prison. CS1 went on to advise the Aramark employee is paid $1,000 by the inmate's friend or family when he picks up the narcotics to be delivered to Blevins. Furthermore, Blevins does not allow the inmates to know which Aramark employee is making the pick-ups and deliveries, nor does he allow the Aramark employee to know which inmate(s) are receiving the narcotics. CS1 also advised Blevins is a user of methamphetamine.

9.      CS1 advised one individual who had received narcotics through Blevins and the Aramark employee is Schawn Little. CS1 is aware that Little provided the phone number of his mother to Blevins and then received narcotics from Blevins after the Aramark employee received narcotics from Little's mother. CS1 also is aware that the Aramark employee was given $1,000 from Little's mother when he picked up the drugs to be delivered to LoCI. Finally, CS1 opined there were five or six inmates who were obtaining narcotics inside LoCI through Blevins and the Aramark employee.

10.     Your Affiant has been advised by the investigators at LoCI that an inmate known as Adam Blevins is currently working in the kitchen at LoCI. Your Affiant has also been

advised by the investigators that Schawn Little is currently incarcerated at LoCI and recorded prison calls between Little and his mother, Lisa Spicer, were reviewed and confirm that Little directed his mother to gather drugs and provide same to an individual who was then to deliver these drugs to the prison.

11.     On or about September 12, 2017, your Affiant was advised by investigators at LoCI that Little had been tested for drug use and had tested positive for use of Suboxone.

12.     Investigation by Affiant and others has identified **614.551.1268 (Target Telephone)** as the number that contacted Lisa Spicer to arrange the pick-up of drugs to be smuggled into LoCI to Blevins on behalf of Little.

13.     A search of Facebook for the **Target Telephone** resulted in the identification of JOSEPH BRODBECK.  On BRODBECK's Facebook page he identifies himself as a Food Service Manager at Aramark.

14.     On September 14, 2017, investigators at LoCI advised BRODBECK is employed by Aramark at LoCI in the kitchen.

15.     On or about October 10, 2017, pursuant to an administrative subpoena, Verizon Wireless confirmed to your Affiant that the **Target Telephone** was subscribed to by JOSEPH BRODBECK.

16.     Through a search of OHLEG your Affiant learned that BRODBECK was convicted in 1987 for trafficking in Dangerous Drugs and was sentenced to 3 to 15 years in state prison.

17.     On October 2017, your Affiant was advised by investigators at LoCI that a Correctional Officer conducted a search in the prison and Adam Blevins was found to be in possession of methamphetamine and Suboxone.

18.     On or about October 20, 2017, your Affiant sought and was granted by the United States District Court for the Southern District of Ohio, an Order authorizing the installation and

monitoring of a Global Positioning Satellite (GPS) Tracking Device on the vehicle used by BRODBECK. On or about October 30, 2017, your Affiant and FBI Task Force Officers (TFOs) installed a GPS system on BRODBECK's vehicle.

19. Review of the GPS information indicates BRODBECK traveled to Springfield, Ohio, on November 15, 2017 and made a brief stop at approximately 7:55 pm in the vicinity of State Route 72 and Lansdowne Avenue.

20. Your Affiant reviewed and analyzed call detail information provided by Verizon Wireless, pursuant to an Administrative Subpoena issued on or about November 21, 2017. Your Affiant submits that on November 15, 2017, at approximately 6:12 pm, the **Target Telephone** received two SMS messages from 937.536.3909. Your Affiant has learned through investigation this number is in frequent contact with two inmates who are housed at LoCI. Further investigation through open source database searches revealed this number was associated with Mykala Johnson, 1120 E. John Street, Springfield, Ohio. Your Affiant notes E. John Street is approximately four city streets away from the location identified by the GPS Unit as a brief stop near State Route 72 and Lansdowne Avenue.

21. Your Affiant, based on his training, knowledge and experience, believes the SMS messages sent from 937.556.3909 to the **Target Telephone** were likely messages sent to coordinate a meeting between Mykala Johnson and BRODBECK.

22. Your Affiant has also reviewed the data provided by the GPS tracking device for November 17, 2017. Information provided by the GPS tracking device indicates BRODBECK traveled to Dayton, Ohio, and made a brief stop near the intersection of Gettysburg and Hoover on the west side of Dayton. This brief stop occurred at approximately 7:55 pm.

23. Your Affiant has also reviewed the call detail provided by Verizon Wireless for this date and noticed outgoing SMS messages from the **Target Telephone** to 937.503.1920 and incoming messages to the **Target Telephone** from 937.503.1920. A total of four SMS messages

were sent/received between the **Target Telephone** and 937.503.1920 from 7:55 to 7:56 pm. Your Affiant has learned through investigation that 937.503.1920 has been in frequent contact with one inmate who is housed at LoCI. Further investigation through open source database searches revealed this number was associated with Evette Taylor, 2921 Melbourne Avenue, Dayton, Ohio. Your Affiant notes Melbourne Avenue is approximately three city streets away from the location identified by the GPS Unit as a brief stop near Gettysburg and Hoover.

24.     Your Affiant, based on his training, knowledge and experience, believes the SMS messages sent between 937.556.3909 and the **Target Telephone**, were likely messages sent to coordinate a meeting between Evette Taylor and BRODBECK.

25.     The requested information will assist law enforcement in identifying the location of the **Target Telephone**, which is relevant in: (a) locating the sources of supply; (b) identifying additional locations where quantities of narcotics and contraband are being stored; and (c) identifying additional co-conspirators in the organization.

26.     In his training and experience, your Affiant has learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and unretrieved voicemail, text, and multimedia messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, your Affiant is aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

27.     Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on his knowledge and experience, your Affiant

7

believes that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

28.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

29.     Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which "cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

30.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile

Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

31.     Wireless providers also maintain business records and subscriber information for particular accounts.  This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers.  In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).  The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

32.     In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.   Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

33.     Your Affiant anticipates executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

34. It is further requested, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

## CONCLUSION

35. Based on the forgoing, it is requested that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States in the Southern District of Ohio that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i) and

is in a district in which the provider, Verizon Wireless is located or in which the wire or electronic communications, records, or other information are stored. 18 U.S.C. § 2711(3)(A)(ii).

36.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

37.     Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Peter A. Lakes
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this 30 day of November, 2017

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with cellular telephone number **614.551.1268** that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.  Information to be disclosed by** Verizon Wireless

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

   a.    All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

   b.    All existing printouts from original storage of all of the text messages described above;

   c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from [Month, Date, Year] to date of order;

   d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 USC §§ 841 and 846 involving [Target Name], and others since March 1, 2015, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      the sale of illegal drugs, locations of meetings between the user of **Target Telephone** and others yet unknown in the Cincinnati, Ohio area, communications between the user of **Target Telephone** and others yet unknown in the Cincinnati, Ohio area and/or instructions on the picking up of large sums of illegal drug proceeds in and around the Cincinnati, Ohio area.

b.      Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC
### BUSINESS RECORDS PURSUANT TO FEDERAL RULE
### OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Verizon Wireless, and my

official title is _____. I am a custodian of records for Verizon

Wireless. I state that each of the records attached hereto is the original record or a true duplicate

of the original record in the custody of Verizon Wireless, and that I am the custodian of the

attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

      a.     all records attached to this certificate were made at or near the time of the

      occurrence of the matter set forth, by, or from information transmitted by, a person with

      knowledge of those matters;

      b.     such records were kept in the ordinary course of a regularly conducted business

      activity of Verizon Wireless; and

      c.     such records were made by Verizon Wireless as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____     _____

Date                        Signature